IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DEWAYNE J. DARRINGTON,

        Petitioner,

    v.

WARDEN, WARREN CORRECTIONAL
INSTITUTION,

        Respondent.

CASE NO. 2:08-CV-582
JUDGE SMITH
MAGISTRATE JUDGE KING

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the petition, respondent's motion to dismiss, and the exhibits of the parties. The Court specifically notes that petitioner has filed no response to the motion to dismiss. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that respondent's motion to dismiss be **GRANTED**, and that this action be **DISMISSED** as barred by the one-year statute of limitations under 28 U.S.C. §2244(d).

## FACTS and PROCEDURAL HISTORY

The Ohio Tenth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On June 23, 2005, appellant was indicted on two counts of felonious assault, in violation of R.C. 2903.11, with firearm specifications, and one count of having a weapon while under disability, in violation of R.C. 2923.13. This matter came for trial before a jury beginning December 13, 2005. The indictment arose out of an incident on June 13, 2005, in which

a shot was fired into an automobile occupied by two individuals.

The first witness for the state was Terella Waderker. On the evening of June 13, 2005, Waderker, an employee of Dial America, was at work until 10:00 p.m. After work, Waderker rode with a friend, Ryan Bailey, in Bailey's vehicle, to a restaurant. Later, at approximately 12:30 a.m., as they were traveling on Hamilton Road, Bailey stopped for a red light at the intersection of Hamilton Road and Main Street.

While Bailey was stopped in the left lane, a white vehicle pulled up to the intersection in the right lane, and Waderker observed four males she had never met before in the other vehicle, approximately two or three feet from Bailey's vehicle. These individuals "starting yelling things out the car * * * just being loud." (Tr. Vol. III, at 162.) The individual seated in the back seat directly behind the driver "was one of the loudest ones[.]" (Tr. Vol. III, at 162.) At trial, Waderker identified this individual as appellant. The driver's window was up, but the back seat window was down, and appellant had "one of his arms outside the window, gesturing something with his hands." (Tr. Vol. III, at 164.)

After the light turned green, Bailey proceeded slowly north on Hamilton Road, and Waderker noticed a lot of movement in the other vehicle. The white vehicle pulled ahead of Bailey's vehicle, and it did not make sense to Waderker as to why appellant "would turn around and just stare[.]" (Tr. Vol. III, at 165.) Waderker thought these individuals were acting "weird," and she noted the license plate number. (Tr. Vol. III, at 167.) The white vehicle then began to slow down, and, as Bailey's vehicle began to pass, approximately two to three feet from the other vehicle, Waderker noticed something in appellant's hands, and she then heard a loud noise.

A bullet hit the rear passenger side window of Bailey's vehicle, and Waderker fell over into Bailey's lap. Glass fragments hit Waderker in the face, neck and shoulder, causing numerous cuts. Bailey pulled over, and Waderker phoned 911. She gave the operator a description of the vehicle and the license

number. They then drove to a friend's house, and waited for a police officer and medical personnel to arrive.

Whitehall Police Officer Michael Dillon was on duty on June 13, 2005, and received a dispatch regarding a shooting. Officer Dillon spoke with the victims shortly after the incident, and the officer observed that the female victim had numerous cuts and was bleeding.

Shortly after the incident, police officers from Columbus and Whitehall responded to an apartment complex located on Linwood Avenue regarding a possible suspect and a firearm. A white Pontiac, license plate number DIL 8556, was parked in the alley in the rear of 60 Linwood Avenue. A weapon, described as a .9mm Hi-Point, was found about 20 yards from the vehicle. A bullet clip was in the weapon, with one round chambered.

While talking with Bailey and Waderker, Officer Dillon received a dispatch that a suspect had been detained. The officer then drove the victims to 60 Linwood Avenue. There were several police cruisers at that location, and a number of individuals congregating around the area. Officer Dillon escorted Waderker to a cruiser, and she immediately told the officer that the individual in the vehicle, who [sic] she identified at trial as appellant, was the person who had shot at her.

Police officers subsequently recovered a bullet fragment from the floorboard of Bailey's vehicle. A police detective ordered testing on the weapon and the bullet fragment recovered from Bailey's vehicle. The testing confirmed that the bullet fragment was fired from the weapon recovered near 60 Linwood Avenue.

The sole witness for the defense was appellant's sister, Shana Miller, age 24, who resides at 56 Linwood Avenue. On June 13, 2005, appellant resided with her at that location, and, on that evening, Miller and appellant were at a party at 60 Linwood Avenue. Miller acknowledged drinking two shots of liquor and probably two beers that evening. According to Miller, her

> brother left the party around 10:15 p.m. to go to the liquor store, approximately five minutes from Linwood Avenue. A friend named Louis accompanied appellant to the store. Miller stated that her brother and Louis left in a red truck and they returned at approximately 10:45 p.m.
>
> Following deliberations, the jury found appellant guilty of Count 1 of the indictment (felonious assault pertaining to Waderker), as well as the firearm specifications related to that count, but not guilty as to Count 2 (felonious assault pertaining to Bailey). The trial court conducted a bench trial on the remaining charge of having a weapon under disability, and the court found appellant guilty of that offense. The trial court sentenced appellant by entry filed January 30, 2006.

*State v. Darrington*, 2006 WL 2780154 (Ohio App. 10th Dist. September 28, 2006). The trial court sentenced petitioner to an aggregate term of ten years incarceration. *Exhibit 6 to Motion to Dismiss.* Petitioner filed a timely appeal in which he asserted the following assignments of error:

> I. The Trial Court erred in failing to instruct the Jury on a lesser included offense of simple Assault, a first degree misdemeanor.
>
> II. The Trial Court erred in overruling Appellant's Rule 29 Motions for Judgment of Acquittal as the evidence was insufficient to establish Appellant as the shooter.
>
> III. Appellant's conviction was against the manifest weight of the evidence.

*See id.* On September 28, 2006, the appellate court affirmed the trial court's judgment. *Id.* Petitioner did not file a timely appeal to the Ohio Supreme Court. On February 23, 2007, he filed a motion for delayed appeal. *Exhibits 11, 12 to Motion to Dismiss*. On April 18, 2007, the Ohio Supreme Court denied petitioner's motion for delayed appeal. *State v. Darrington*,

4

113 Ohio St.3d 1464 (2007).

Petitioner also filed, on February 23, 2007, a delayed application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). *Exhibit 15 to Motion to Dismiss*. He asserted that he had been denied the effective assistance of counsel because his attorney failed to raise the following claims on direct appeal:

> 1. The trial court erred when appellant's motion to suppress identification testimony was overruled thereby violating appellant's fifth and Fourteenth Amendment rights.
>
> 2. The State of Ohio committed prosecutorial misconduct when the prosecutor, Keith McGrath made prejudicial statements in the presence of the jury, thus violating appellant's fourteenth Amendment due process rights.

*See Exhibits 15, 16 to Motion to Dismiss.* On May 31, 2007, the appellate court denied petitioner's delayed Rule 26(B) application for failure to establish good cause for his untimely filing. *Exhibit 18 to Motion to Dismiss*. Petitioner apparently did not file a timely appeal from that decision to the Ohio Supreme Court.

On June 18, 2006, petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. §2254. He executed the petition on May 31, 2008. He asserts that he is in the custody of the respondent in violation of the Constitution of the United States based upon the following grounds:

> 1. The evidence adduced at petitioner's trial is insufficient to sustain petitioner's conviction.
>
> 2. The trial court erred in not giving the jury an instruction on a lesser included offense.

3. Ineffective assistance of appellate counsel.

It is the position of the respondent that this action must be dismissed as barred by the one-year statute of limitations under 28 U.S.C. §2244(d).

## STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which became effective on April 24, 1996, imposes a one-year statute of limitations on the filing of habeas corpus petitions. 28 U.S.C. §2244(d) provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State

> post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

Petitioner's conviction became final on November 13, 2006, forty-five days after the Ohio Court of Appeals' September 28, 2006, dismissal of his direct appeal, when the time for filing a timely appeal to the Ohio Supreme Court expired.[1] *See Searcy v. Carter*, 246 F.3d 515, 518-19 (6th Cir. 2001); Ohio Supreme Court Rule of Practice II, Section 2(A)(1)(a). The statute of limitations ran for 102 days, until February 23, 2007, when petitioner filed his motion for delayed appeal with the Ohio Supreme Court. That action tolled the running of the statute of limitations until April 18, 2007, when the Ohio Supreme Court denied petitioner's motion for delayed appeal. *See Lawrence v. Florida*, 549 U.S. 327 (2007). The statute of limitations expired 263 days later, on January 7, 2008. Petitioner waited until May 30, 2008, to execute his habeas corpus petition. His February 23, 2007, delayed application to reopen the appeal did not toll the running of the statute of limitations, because the state appellate court denied the Rule 26(B) application as untimely. *See Allen v. Seibert*, 128 S.Ct. 2 (2007); *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005). Further, petitioner has failed to allege any extraordinary circumstances that would justify equitable tolling of the statute of limitations. *See King v. Bell*, 378 F.3d 550, 553 (6th Cir. 2004).

For the foregoing reasons, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED** as time-barred under 28 U.S.C. §2244(d).

---

[1] The 45th day fell on a Sunday, so petitioner actually had 46 days, or until November 13, 2006, to file a timely appeal to the Ohio Supreme Court.

If any party objects to this *Report and Recommendation*, that party may, within ten (10) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C.§636(b)(1).


<u>May 19, 2009</u>                                                          <u>  s/Norah McCann King          </u>
                                                                                   Norah McCann King
                                                                                   United States Magistrate Judge